UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 04-1134 JVS (FMOx) | Date | May 9, 2006 |
| Title | Doug Martin v. Arrow Electronics | | |

Present: The Honorable   James V. Selna

| | |
|---|---|
| Karla J. Tunis | Not Present |
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:    Attorneys Present for Defendants:

Not Present    Not Present

**Proceedings:**   (In Chambers)   Order Denying Plaintiff's Motion for Partial Summary Judgment (Fld 4-3-06)

Order Granting in Parte and Denying in Part Defendant's Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment (Fld 4-4-06)

I.   BACKGROUND

Plaintiff Doug Martin ("Martin") brings a motion for partial summary judgment against Defendant Arrow Electronics, Inc. ("Arrow") based on his claim for failure to offer reasonable accommodations pursuant to Cal. Gov. Code § 12940(m). Arrow brings a motion for summary judgment based on all of the claims in Martin's Amended Complaint. The facts relating to the two motions are identical. The Court consolidates the two motions.

In May 1998, Martin was hired by Arrow as a field sales manager. On April 1, 1999, Arrow promoted Martin to general manager for the Orange County facility of Arrow's new division, Arrow/Bell Components. (First Amended Complaint ["Complaint"], ¶ 7.)

In the Summer of 2001, Martin enrolled in Arrow's Employee Assistance Program – Life Balance ("Life Balance program"), and started counseling sessions with Dr. Kimberly Salter, PhD. (Id., ¶ 9.) Martin avers that he entered the Life Balance program because he suffered from panic attacks during summer 2001, which developed into a panic disorder without agoraphobia in the later summer and early fall of 2001, and later into a panic disorder with agoraphobia in 2002. (Id.) Martin states that he suffered

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 04-1134 JVS (FMOx) | Date | May 9, 2006 |
|---|---|---|---|
| Title | Doug Martin v. Arrow Electronics | | |

a severe panic attack on May 10, 2002 for which he was hospitalized. (Id.)

On May 20, 2002, Martin was diagnosed with a panic disorder with agoraphobia. (Complaint, ¶ 11.) On May 22, 2002, Martin's treating physician, Dr. Angela Calton, M.D., sent a Return to Work or School Note to Arrow. This note diagnosed Martin with a panic disorder and agoraphobia. (Lanza Decl., Ex. 3.) On June 4, 2002, Dr. Calton sent another Return to Work or School Note to Arrow diagnosing Martin with chest pain and anxiety. (Lanza Decl., Ex. 4.) The note stated that Martin had permission to return to work on June 10, 2002. (Id.)

On June 5, 2002, Martin faxed a Disability Claim Form, signed by Dr. Calton, to Arrow. The form states that Martin suffers from "severe depression/anxiety-panic attacks and agoraphobia." (Lanza Decl., Ex. 5.) The form also states that Martin was "continuously and totally disabled" since May 10, 2002. (Id.)

On June 13, 2002, Arrow granted Martin a medical leave of absence. (Santos Depo. at 64:5-21, 65:22-66:8, 74:2-23, Ex. 102.) Martin was permitted to remain on leave for one year. (Id.)

On June 17, 2002, Martin received a memorandum from Arrow's human resources department, stating: "The current reorganization of our business will result in the elimination of your position. Due to the fact that you are on a leave of absence, the condition of this letter will apply to you at the time you are released by your doctor to return to work." (Lanza Decl., Ex. 1.) On June 19, 2002, Martin received a memorandum from Arrow's President of North American Components, Jan Salsgiver, stating: "As a result of the integration of the Arrow Semiconductor and Arrow Wyle Communications Group into one organization, Arrow Wyle Electronics, I am pleased to announce the following senior management appointments in the four markets that are changing . . . Orange County . . . Pete Ainsworth – General Manager, ABC." (Martin Decl., ¶ 7.)

On May 16, 2003, Jennifer Santos, an Arrow Employee in the human resources department, sent Martin a letter which confirmed that his employment with Arrow would terminate effective June 13, 2003, one year after his leave of absence had begun, because he was "still unable to return to work." (Martin Decl., ¶ 8.)

On May 3, 2004, Martin filed the instant action in the Superior Court of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 04-1134 JVS (FMOx) | Date | May 9, 2006 |

| | |
|---|---|
| Title | Doug Martin v. Arrow Electronics |

California, County of Orange. Arrow removed the action to this Court based on diversity jurisdiction in September, 2004. On October 22, 2004, Martin filed and served an Amended Complaint asserting causes of action for: 1) employment discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), 2) tortious termination, and 3) intentional infliction of emotional distress.

## II.　LEGAL STANDARD

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (Id. at 248.) In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." (Id. at 255.)

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. (See id. at 322-23.) If the non-moving party meets this burden, then the motion will be denied. Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000).

## III.　DISCUSSION

### A.　DISCRIMINATION

Martin asserts a claim for employment discrimination in violation of FEHA. Martin alleges that he was discriminated against, in the form of termination and/or adverse employment treatment, by Arrow on the basis of his disability. (Complaint, ¶21.) Pursuant to FEHA, employers are prohibited from discrimination against an employee on the basis of physical disability, mental disability or medical condition. Cal. Gov. Code § 12940(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 04-1134 JVS (FMOx) | Date | May 9, 2006 |
| Title | Doug Martin v. Arrow Electronics | | |

In order to establish a prima facie case for discrimination on the basis of a disability, an employee must demonstrate that 1) he suffers from a disability, 2) he is otherwise qualified to do his job, and 3) he was subjected to an adverse employment action because of the disability. Deschene v. Pinole Point Steel Co., 76 Cal. App. 4th 33, 44 (1999).

Plaintiffs may demonstrate intentional discrimination through direct evidence, or indirect evidence pursuant to McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).[1] Pursuant to McDonnell-Douglas, a plaintiff must first establish a prima facie case of discrimination. In order to establish a prima facie case of discrimination under FEHA, "generally, the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggest[ing] discriminatory motive." Guz, 24 Cal. 4th at 355. Other circumstances suggesting a discriminatory motive may be shown by similarly-situated employees outside plaintiff's protected class who were treated better. Caldwell v. Paramount Unified School District, 41 Cal. App. 4th 189, 202-03 (1995).

If a plaintiff establishes a prima facie case, a presumption of discrimination arises. Guz, 24 Cal. 4th at 355. The burden then shifts to the employer to rebut that presumption by producing admissible evidence which is sufficient to raise a genuine issue of fact, and to demonstrate that the action was taken for a legitimate, nondiscriminatory purpose. Id. at 355-56. If the employer comes forward with such evidence, then the presumption of discrimination disappears. Id. at 356. "The plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." Id. "The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff." Id.

---

[1] In Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317, 354 (2000), the court held that "[b]ecause of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." Further, "California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination, including age discrimination, based on a theory of disparate treatment." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 04-1134 JVS (FMOx)                            Date   May 9, 2006

Title   <u>Doug Martin v. Arrow Electronics</u>

1. <u>Whether Martin Suffered from a Disability / Was a Member of a Protected Class</u>

Martin asserts that he suffered from a mental disability covered by FEHA. A "mental disability" includes "any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities that limits a major life activity." Cal. Gov. Code § 12926(i). The disability must be such that a plaintiff's impairment makes a major life activity difficult for the plaintiff, as compared to the average person without such impairment. <u>E.E.O.C. v. United Parcel Service, Inc.</u>, 424 F.3d 1060, 1071 (9th Cir. 2005). The term "major life activity" includes physical, mental and social activities and working. Cal. Gov. Code § 12926(k)(1)(B)(iii); Cal. Gov. Code § 12926.1(c).

As Martin points out, Arrow's expert psychiatrist, Dr. James Rosenberg, M.D., has acknowledged that Martin suffered from bipolar disorder which is "a major psychiatric disorder due to underlying biochemical brain factors." (Lanza Decl., Ex. 8.) Further, Martin's retained psychiatrist, Dr. Dominick Addario, states that Martin suffers from bipolar disorder. (<u>Id.</u>, Ex. 9.) Bipolar disorder is listed as a qualifying mental disability under FEHA. Cal. Gov. Code § 12926.1(c). Further, the evidence appears to demonstrate that Martin was limited in major life activities, and Arrow does not argue otherwise.

For purposes of the instant motion, Arrow does not to dispute that Martin suffers from a disability, and suffered from a disability at all relevant times. The Court notes that while bipolar disorder is expressly identified as a qualifying mental disability under FEHA, the majority of the parties' contentions relate to when and whether Arrow was aware that Martin suffered from panic and anxiety related problems. However, because Arrow does not dispute that Martin suffers from a disability, the Court need not parse through the evidence, making distinctions between panic disorders and bipolar disorder.

The Court finds that Martin suffers from a disability covered by FEHA, and is a member of a protected class.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 04-1134 JVS (FMOx) | Date | May 9, 2006 |
| Title | Doug Martin v. Arrow Electronics | | |

2.  <u>Whether Martin was Qualified to Perform his Job</u>

Martin avers that if Arrow had offered him reasonable accommodation, or initiated a dialog upon learning of his disability, rather than sending the June 17, 2002 termination memorandum, he would have been able to perform multiple alternative positions. (Martin Decl., ¶ 13.) Martin avers that his ability and willingness to perform other jobs was confirmed by Dr. Salter, and his retained psychiatrist, Dr. Addario. (Lanza Decl., Exs. 10, 11.)

Arrow contends that Martin could not perform the essential functions of his employment position, with or without reasonable accommodation because he was totally disabled. <u>Weyer v. Twentieth Century Fox Film Corp.</u>, 198 F.3d 1104, 1108 (9th Cir. 2000); <u>Allen v. Pacific Bell</u>, 212 F. Supp. 2d 1180, 1192 (C.D. Cal. 2002). In the context of a claim under the ADA, the Ninth Circuit held that "[a] totally disabled person who cannot perform the essential functions of the employment position with or without reasonable accommodations . . . cannot be a qualified individual entitled to sue" under the ADA. 198 F.3d at 1108 (internal citations and quotation marks omitted).

Arrow claims that Martin was not a qualified individual with a disability at the time of the alleged adverse employment action, because Martin was purportedly totally disabled at the time of his termination. (Santos Depo. at 112:17-114:18, Exs. 110, 111; Constantino Depo. at 58:8-12.) However, the Court notes that the documents to which Santos refers in the cited excerpts of her deposition testimony, the May 22 and June 4, 2002 Return to Work of School notes, do not explicitly state that Martin was temporarily totally disabled. Yet Martin's June 5, 2002 disability claim form did state that Martin was continuously totally disabled from May 10, 2002. In any event, Arrow asserts that since May 22, 2002 it has not received any notice that Martin was released to return to work. (Santos Depo. at 67:24-68:21.) Arrow avers that Dr. Salter testified that Martin was unable to perform the essential functions of his job through 2005. However, Arrow did not provide the Court with a citation to locate this deposition testimony.

As Martin states, a temporary disability may or may not become permanent, and therefore does not automatically prevent an employee from being a qualified individual. (Martin Opp'n, p. 6; Martin Reply, p. 6.) If a disability is temporary, an employee can obviously return to work, or be accommodated.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 04-1134 JVS (FMOx) | Date | May 9, 2006 |
| Title | Doug Martin v. Arrow Electronics | | |

Arrow's response is that FEHA does not prohibit an employer from terminating an employee with a disability where the employee is unable to perform the essential duties of his job, with or without reasonable accommodations. Cal. Gov. Code § 12940(a)(1). Arrow further states that it is irrelevant whether Martin's disability was temporary or permanent, because he has recently testified that he has been unable to work at anytime since May 2002 through September 2003, and that he has never been released to work for Arrow at anytime after May 10, 2002. (Martin Depo. Vol. II, pg. 97:9-98:16.) However, the Court finds that this is an attempt to provide an after the fact explanation for Arrow's actions.

Clearly employers may not terminate employees the moment they become temporarily totally disabled, if the motivating factor for the termination is the employee's disability, and then use the fact that for a period of time such employee could not perform the essential duties of his or her job as an explanation for that termination. It appears to the Court that such an approach would contravene the policies of FEHA.

The Court finds that there is a genuine issue of material fact as to whether Martin could perform the essential duties of his job, with or without accommodation. Martin has expressly stated in his declaration that he could have performed other jobs at Arrow, and Arrow puts forth evidence that suggests a contrary finding.

### 3.   Whether Martin was Subjected to Adverse Employment Action

Martin was terminated from his employment, and therefore suffered an adverse employment action.

### 4.   Circumstances Suggesting Discriminatory Motive

Martin avers that there is evidence to demonstrate circumstances suggesting that Arrow had a discriminatory motive in terminating him. Arrow disagrees.

#### a.   June 17, 2002 and June 19, 2002 Memoranda

First, Martin avers that the two memoranda that he received on June 17, 2002, and June 19, 2002, are "smoking guns" and "nothing more than a farce." (Martin Opp'n, p. 10.) Martin points to the testimony of Mark Stander, a former Arrow General Manager, who stated that Martin's "position was at no time eliminated; it was simply

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 04-1134 JVS (FMOx) | Date | May 9, 2006 |
|---|---|---|---|
| Title | Doug Martin v. Arrow Electronics | | |

occupied by Pete Ainsworth instead of Doug Martin." (Mark Stander Decl.)

Arrow responds that the June 17, 2002 memorandum is a form letter or notice used by Arrow to notify an employee that he or she has been laid off as a result of business reorganization, and that the phrase "elimination of your position" does not mean that the position bearing the title held by such an employee will cease to exist at Arrow. (Arrow Reply, p. 12.) Arrow therefore contends that Martin has not created a genuine issue of fact as to Arrow's motivation for laying Martin off by presenting evidence that the position had not, in fact, been eliminated, but rather had been filled by Ainsworth. (Id., pp. 12-3.)

b.  Arrow's Policy of Accommodating Disabled Employees

Second, Martin avers that Arrow's purported violations of its own policies by failing to accommodate disabled employees demonstrates discriminatory animus. (Martin Opp'n, p. 12.) The document that Martin refers to is entitled "Accommodating Disabled Employees." In his declaration, Martin states that when he first began suffering from panic attacks and a panic disorder without agoraphobia in the Summer/Fall of 2001, he notified Arrow who on August 14, 2001, faxed him the document in question. (MSUF, ¶¶ 32, 49, Exs. 6, 7.) The document states in pertinent part:

> The manager should *not* wait for the employee to request accommodation if s/he is otherwise made aware that the employee may be unable to fully perform the job duties . . . An employer has a duty to reasonably accommodate the known disabilities of employees who are otherwise qualified to perform the essential functions of their current job or some other vacant job . . . An employer should never . . . ignore an employee's disability or apparent need for accommodation simply because the employee has not initiated a request for accommodation."

(Ex. 6, emphasis in original; Statement ¶ 33-5.) As discussed in depth below, Martin avers that Arrow failed to initiate a dialog concerning reasonable accommodations, or provide him with reasonable accommodations.

Arrow responds that there is no evidence that it violated its own policies. (Arrow Reply, p. 13.) First, Arrow contends that the document Martin refers to is not an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 04-1134 JVS (FMOx) | Date | May 9, 2006 |
|---|---|---|---|
| Title | Doug Martin v. Arrow Electronics | | |

Arrow document and therefore is not evidence of Arrow's policies with regard to accommodating disabled employees. (Santos Depo. pp. 119:23-124:2.) However, the Court notes that Santos merely opined in her deposition testimony that the document might have been provided by Arrow's insurance carrier, Cigna. (Id.) Second, Arrow avers that this document even combined with evidence of Arrow's conduct does not create a genuine issue of fact as to Arrow's motive for Martin's lay off. (Arrow Reply, p. 13.)

Arrow further states that as shown by a correspondence to Martin in December 2002, Arrow looked forward to Martin's return. (Santos Depo., Ex. 103.) Arrow refers to a December 6, 2002 note from Santos to Martin in which Santos acknowledges that Arrow received his doctor's note stating that Martin extended his leave until June 10, 2003. (Id.)

        c.      Arrow's Knowledge of Martin's Alleged Disability

Arrow contends that to the extent that Martin claims that Arrow engaged in any adverse job action against him prior to the medical leave, there is no evidence of discriminatory motivation behind such actions because Arrow was not aware of his alleged disability. (Arrow Mot., p. 15.) As Arrow states, in order to demonstrate discrimination on the basis of a disability, "a plaintiff must prove that the employer had knowledge of the employee's disability when the adverse employment decision was made." Brundage v. Han, 57 Cal. App. 4th 228, 237 (1997). Further, while knowledge of a disability may be inferred from certain circumstances, "knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts." Id.

First, Arrow states that while Martin requested to use counseling offered through the Life Balance program, Arrow was informed that Martin was seeking marriage counseling. (Santos Depo. at 30:14-16.) Arrow, however, acknowledges that Martin later began consulting with Dr. Salter for his own issues. (Salter Depo. at 31.) Second, Arrow points out that Randall Kippert and Vincent Vellucci, the two individuals directly involved in deciding that Martin should be terminated, stated in declarations that they did not perceive that Marin was disabled. (Vellucci Decl., ¶ 12; Kippert Decl., ¶ 17.) Kippert and Velluci both stated in declarations that they were told in late Spring 2002 that Martin went out on medical leave, but were not informed of Martin's medication condition, or the reason for his leave. (Id.) However, the Court notes that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 04-1134 JVS (FMOx) | Date | May 9, 2006 |
| Title | Doug Martin v. Arrow Electronics | | |

Vellucci testified in a deposition that he was not informed that Martin was placed on medical leave until the filing of the instant lawsuit. (Vellucci Depo. at 26:9-15.)

Martin, however, avers that Arrow was fully aware of Martin's disability no later than May 2002, before the decision was made to terminate Martin. (Martin Opp'n, p. 8.) Martin points to Arrow's statements in its motion for summary judgment that on May 22, 2002, Arrow was informed that Martin was totally disabled when it received his Return to Work or School Note. (Arrow Mot., p. 18; Arrow's Separate Statement of Undisputed Facts, "ASSUMF," ¶ 24.) Again, the Court notes that the Return to Work or School Notes do not specifically state that Martin was totally disabled, but the June 5, 2006 disability claim form does.

As Martin contends, both of the Arrow human resource representatives who handled his disability claim and termination, Beth Constantino and Jennifer Santos, have acknowledged that Arrow received Martin's Return to Work or School Notes which diagnosed Martin with anxiety, panic attacks and agorophobia in May 2002 and early June, before the June 17, 2002 memorandum was sent. (Martin's Separate Statement of Undisputed Facts, "MSUF," ¶¶ 24-7, 36-9; Lanza Decl., Exs. 3, 4, and 5.) Martin's June 5, 2002, Disability Claim Form, was processed by Arrow employee Marci Salzman on June 6, 2002. (MSUF, ¶¶ 24-7.)

As Martin points out, Arrow attempts to claim that it was not aware of Martin's disability, by claiming that neither Velluci nor Kippert was informed that Martin was disabled. Martin first avers that knowledge on behalf of Arrow's human resource representatives is knowledge on behalf of the company. (Martin Opp'n, p. 9.) Second, Martin avers that both Velluci and Kippert testified that Constantino had knowledge of Martin's disability. (Id.) Martin does not provide the Court with a citation to this particular deposition testimony. Third, Martin contends that Kippert and Velluci have impeached their own deposition testimony by testifying that the only two criteria used in making the decision to lay-off Martin were his 2001 performance review and his seniority, and later claiming in declarations that they also considered his branch performance. (Id.)

In any event, the Court finds that Arrow has failed to carry its ultimate Celotex burden with respect to demonstrating that there were no circumstances suggesting a discriminatory motive. It appears to the Court that the evidence demonstrates that Arrow was aware that Martin was suffering from anxiety and panic

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 04-1134 JVS (FMOx) | Date | May 9, 2006 |
| Title | Doug Martin v. Arrow Electronics | | |

disorders and was out on medical leave, when the decision was made to terminate him.

### 5. Legitimate or Nondiscriminatory Purpose

Even if Martin established a prima facie case of discrimination, Arrow asserts that Martin's first cause of action for discrimination fails because Arrow has articulated a non-discriminatory reason for terminating Martin, and Martin has not established that the reason was merely a pretext. (Arrow Mot., p. 19.) Arrow states that due to a severe economic downturn, Arrow integrated two operating units of the company into one division. (Vellucci Decl., ¶ 3, 4, 7.) Arrow states that as a result of the consolidation of the two operating units, Arrow eliminated one General Manager position in Orange County. (Id., ¶ 6.)

Arrow states that the decision to terminate Martin was made after analyzing the 2001 Employee Performance Reviews of Martin and three other employees who were all general managers of various operating groups in Orange County, as well as the seniority of all of the general managers. (Vellucci Decl., ¶ 8; Kippert Decl., ¶ 13.) Arrow states that Martin tied with another general manager for the lowest performance review sore, and had the least amount of seniority of all of the general managers. (Kippert Decl., ¶ 13; Vellucci Decl., ¶ 10.) Arrow additionally avers that Martin's branch's performance in 2001 was ranked as among the worst performing branches in North America. (Vellucci Decl., ¶ 9.) Arrow further states that "Martin had also been severely criticized in 2001 for allowing the creation and perpetuation of serious personnel issues which led to an internal investigation of the branch by Arrow's Director of Human Resources, Beth Constantino." (Id.) Arrow therefore concludes that "based upon the overall scores on each of the general manger's [performance reviews] and their seniority, coupled with the serious criticism of Mr. Martin's performance as the General Manager of the Arrow/Bell Components Orange County sales office in 2001, it was determined that Mr. Martin should be laid off." (Arrow Mot., p. 20; ASSUMF, ¶¶ 11-17.)

#### a. Humphrey v. Memorial Hospitals Association

Martin, however, claims that his 2001 performance review either should not be considered, or should have been given little weight pursuant to Humphrey v. Memorial Hospitals Assn., 239 F.3d 1128 (9th Cir. 2001). Martin therefore claims that even if Arrow's factual assertions in Arrow's Motion for Summary Judgment are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 04-1134 JVS (FMOx) | Date | May 9, 2006 |
|---|---|---|---|
| Title | Doug Martin v. Arrow Electronics | | |

accurate, Arrow has still engaged in unlawful discrimination.

In Humphrey, the court held a denial of an accommodation based on past disciplinary action taken due to a disability was inconsistent with the purposes of the ADA, and therefore plaintiff's disciplinary record did not constitute an appropriate basis for denying her reasonable accommodations. 239 F.3d at 1137-40. Further, the employee was later terminated because of absenteeism and tardiness, which the court found to be conduct resulting from the employee's disability, and therefore an improper basis for termination. Id. at 1140.

Martin specifically points to a passage in Humprey in which the Ninth Circuit states: "For purposes of the ADA, with a few exceptions, conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination. . . ." Id. at 1139-40. Martin therefore avers that under Humphrey, Martin's final performance review cannot be considered, or should at least be modified to reflect the impact that Martin's purported disability had on his performance review. (Martin Opp'n, p. 15.) Martin states that in his performance review in the year preceding his disability, he received the best overall score of any of the four Orange County General Managers. (Lanza Decl., Exs. 20-23.) Martin states that in the following year, the year when his disability developed, his overall score dropped by a larger percentage than any other Orange County General Manager. (Lanza Decl., Exs. 20-3; Martin's Statement of Genuine Issues, ¶ 80.) Martin avers that "although [his] disabilities were largely in control until after the termination memo on June 17, 2002, they obviously did impact his performance. . . ." (Martin Opp'n, p. 16.) Martin concludes that "[p]ursuant to Humprey, it was unlawful for [Arrow] to terminate Martin based upon his final [performance review] because it was deflated by Martin's disability." (Id.)

Arrow contends in it Reply that unlike in Humphrey, there is no evidence to support a finding that but for Martin's disability his 2001 performance review would not have been the lowest of the General Managers who were candidates for the layoff. (Arrow Reply, p. 11.) Arrow points out that Martin disagreed with the 2001 performance review. (Martin Depo. Vol. II, 77:18-23.) Arrow appears to contend that Martin expressly testified that his performance review was not deflated by any alleged disability; however, the Court is unable to find that passage of testimony in the deposition transcripts.

The Court finds that Martin has put into reasonable dispute whether Arrow

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 04-1134 JVS (FMOx) | Date | May 9, 2006 |
| Title | Doug Martin v. Arrow Electronics | | |

should have relied on a performance review, which may have been in part the product of Martin's disability, in deciding to terminate him.

For the foregoing reasons, the Court finds that Arrow has failed to carry its ultimate Celotex burden with respect to Martin's first cause of action for unlawful discrimination.

B.   **REASONABLE ACCOMMODATION**

Martin asserts that Arrow failed to provide him with reasonable accommodations, in violation of FEHA. The Court notes that many of the issues and arguments raised above are equally applicable to the issue of whether Martin was entitled to and/or provided reasonable accommodations.

Employers must provide reasonable accommodation for an employee with a known mental or physical disability, unless such accommodation would cause undue hardship to the employer. Cal. Gov. Code § 12940(m). "In order to state a claim for failure to accommodate, a plaintiff must allege that he suffers from a disability covered by the FEHA. A plaintiff need not show that he is a qualified individual within the meaning of [the ADA]. In addition, a plaintiff need not establish that an adverse employment action was taken against him." Hurley v. Pechiney Plastic Packaging, Inc., Slip Copy, 2006 WL 708656 at * 6 (N.D. Cal. March 16, 2006); Jensen v. Wells Fargo Bank, 85 Cal. App. 4th 245, 256 (2000). "For purposes of section 12940, subdivision (k) claim, the plaintiff proves he or she is a qualified individual by establishing that he or she can perform the essential functions of the position to which reassignment is sought, rather than the essential functions of the existing position." Jensen, 85 Cal. App. 4th at 256.

For the purposes of this motion, Arrow does not to dispute that Martin's suffers from a disability covered by FEHA, and suffered from a disability at all relevant times.

"Assuming the employee is disabled, the employer cannot prevail on summary judgment on a claim of failure to reasonably accommodate unless it establishes through undisputed facts that (1) reasonable accommodation was offered and refused; (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of

Case 8:04-cv-01134-JVS-FMO   Document 102   Filed 05/09/06   Page 14 of 20   Page ID #:128

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 04-1134 JVS (FMOx) | Date | May 9, 2006 |
|---|---|---|---|
| Title | Doug Martin v. Arrow Electronics | | |

performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the information interactive process broke down because the employee failed to engage in discussions in good faith." Jensen, 85 Cal. App. 4th at 263.

Further, employers who are aware of an employee's disability may have an affirmative duty to make reasonable accommodations for such a disability. Prilliman v. United Airlines, 53 Cal. App. 4th 935, 949-50 (1997). As long as the employer is aware of the employee's disability, the duty to provide reasonable accommodations arises, even if the employee has not specifically requested such accommodations. Id. Further, a finite paid or unpaid leave of absence may qualify as a reasonable accommodation, if after the leave the employee could likely resume his duties. Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 226-7 (1999); Jensen v. Wells Fargo Bank, 85 Cal. App. 4th 245, 263 (2000).

As stated above, Arrow first contends that it is entitled to summary judgment based on this cause of action because Martin was not a qualified individual with a disability because he was totally disabled at the time of his termination. (Arrow Reply, p. 6.) Arrow contends that Martin has failed to present any evidence that he was a qualified individual with a disability after May 10, 2002. (Arrow Mot., p. 21.) Arrow avers that there is only evidence that Martin was totally disabled beginning in May 10, 2002, and was never released to return to work. As discussed above, Martin disagrees, stating that his disability was temporary, and therefore that he was capable of performing other jobs at Arrow. (Martin Decl., ¶ 13.)

As stated above, Arrow contends that it did not have knowledge of Martin's alleged disability prior to his medical leave, which began on May 10, 2002. (Arrow Mot., p. 21.) Martin, however, avers that Arrow was fully aware of his disabilities prior to his purported termination on June 17, 2002, and therefore had an affirmative duty to reasonably accommodate him. (Martin Opp'n, pp. 8-9.)

Martin avers that despite the fact that Arrow was aware of Martin's disability before the June 17, 2002 memorandum, and despite Arrow's explicit policy, embodied in the document entitled "Accommodating Disabled Employees," Arrow failed to initiate or suggest an accommodation dialog, or provide any type of accommodation. (Martin Mot., p. 10.) Further, Martin points to Santos' statement that there was no need

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 04-1134 JVS (FMOx) | Date | May 9, 2006 |
| Title | Doug Martin v. Arrow Electronics | | |

to accommodate Martin because if "a disabled employee did not request an accommodation, [Arrow] did not accommodate that employee." (MSUF, ¶ 30.) However, the Court notes that what Santos actually stated is that a disabled person would have to make a request through a doctor's note for accommodations. (Id.) Santos further stated that if an employee did not make a request for an accommodation, then Arrow would not take steps to accommodate them because Arrow would not know what the accommodation should be. (Id.) Further Martin points out that, when asked whether Arrow attempted to make a reasonable accommodation upon Martin's request, Constantino responded that "Martin didn't request any reasonable accommodation." (Id., ¶ 42.)

Arrow additionally contends that Martin obstructed any communications concerning reasonable accommodations. Arrow states that it looked forward to Martin's return to work, but could not directly assist Martin in finding alternative employment at Arrow, because Dr. Salter ordered that Martin have no contact with Arrow, nor Arrow with Martin. (MSUF, ¶ 23; Salter Depo. Vol. I, pp. 73, 126-7, 132-3, attached as Ex. E to Scalabrini Decl.) However, the Court notes that in the deposition testimony to which Arrow directs the Court, Salter states that she did not know, but it was possible that she told employees of Arrow not to contact Martin. (Salter Depo., pp. 73.) Yet, in Martin's Statement of Genuine Issues in Opposition to Arrow's Motion for Summary Judgment, he does not dispute that Arrow informed Dr. Salter that Arrow would be giving Martin notice that his position had been eliminated, at which time Arrow was instructed to forward a memorandum regarding Martin's layoff directly to Dr. Salter. (Martin's Statement of Genuine Issues, ¶ 27.) In any event, Arrow avers that Martin had no right to withdraw himself from the interactive process and force Arrow to engage in the process with Dr. Salter. Arrow cites Claudio v. Regents of University of California, 134 Cal. App. 4th 224, 247 (2005), for this proposition. However, due to the unusual circumstances in that case, the court in Claudio stated that "we cannot say as a matter of law that it was unreasonable for plaintiff [employee] to require [the employer] to communicate with its attorney." 134 Cal. App. 4th at 247.

Martin contends that Arrow was permitted to communicate with Martin through Dr. Salter, and in fact did so by faxing the June 17, 2002 memorandum directly to Dr. Salter for delivery to Martin. (Lanza Decl., Ex. 1.) Martin states that "[t]his Court is therefore being asked to believe that [Arrow] was permitted to terminate Martin through fax communication with Dr. Salter but was not permitted to communicate through Dr. Salter in satisfying its mandatory legal obligation to offer reasonable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 04-1134 JVS (FMOx) | Date | May 9, 2006 |
| Title | Doug Martin v. Arrow Electronics | | |

accommodation." (Martin Reply, p. 4.) Martin further contends that because Arrow had knowledge of his disability prior to sending the purported termination memorandum on June 17, 2002, Arrow destroyed any potential interactive accommodation process by sending the memorandum.

Arrow asserts that in any case it provided reasonable accommodation by providing Martin with extended medical leave. Arrow points out that a paid or unpaid leave may qualify as a reasonable accommodation if an employee is likely to be able to return to work at the end of the leave. Hanson, 74 Cal. App. 4th at 226-7; Jensen, 85 Cal. App. 4th at 263. Arrow asserts that Martin's employment was not terminated until after Martin was on leave for one-year and Arrow was not informed that he would be able to return to work, with or without accommodation. (Santos Depo. Ex. 102.) Arrow refers to a May 15, 2003 letter sent from Santos to Martin. The letter states in pertinent part that Arrow granted Martin a leave of absence beginning of June 13, 2002, and since he was still unable to return to work, either at that point or at a future date, Arrow was unable to extend Martin's leave any further. (Id.) Arrow therefore stated that Martin's employment would be terminated effective June 13, 2002. (Id.)

However, Martin avers that Arrow misunderstands the concept of medical leave as a form of reasonable accommodation. (Martin Opp'n, p. 18.) Martin contends, and the Court agrees, that medical leave is intended to provide employees with an opportunity to recover from a disability so as to avoid termination, not to postpone the effective date of an employee's termination until the medical leave expires. See Hanson, 74 Cal. App. 4th at 226. Martin avers that the June 17, 2002, memorandum demonstrates that Martin was being terminated, without contingency, and that his termination would be formalized upon the expiration of his medical leave. Again, the June 17, 2002 memorandum states: "The current reorganization of our business will result in the elimination of your position. Due to the fact that you are on a leave of absence, the conditions of this letter will apply to you at the time you are released by your doctor to return to work." (Lanza Decl., Ex. 1.)

Martin further asserts that Arrow's assertion in its Opposition to Martin's Motion for Partial Summary Judgment, that Arrow encouraged and looked forward to Martin's return to work is disingenuous. The Court notes that Arrow stated in a December 2002 correspondence to Martin that Arrow looked forward to martin's return. (Santos Depo., Ex. 103, attached as Ex. D to Scalabrini Decl.) Martin avers that the June 17, 2002, memorandum clearly shows that Arrow did not look forward to Martin's return

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 04-1134 JVS (FMOx) | Date | May 9, 2006 |
| Title | Doug Martin v. Arrow Electronics | | |

to work. Martin avers that his release from his doctor to return to work was equivalent to formal termination. (Martin Reply, p. 4.)

The Court finds that the facts relating to whether Arrow had a duty to and did provide Martin with reasonable accommodations are in dispute. Neither side has carried its ultimate Celotex burden with respect to this cause of action.

C.  TORTIOUS TERMINATION

Martin contends that Arrow's conduct constitutes discrimination, retaliation and/or wrongful termination in violation of public policy embodied under FEHA and/or Section 132(a) of the California Labor Code. (Complaint, ¶ 27.)

Arrow avers that Martin contends that he was wrongfully terminated or retaliated against because he filed a claim for workers' compensation benefits. (Arrow Mot., p. 21.) The Court fails to see these allegations in the Complaint.

In order to establish a claim for wrongful termination in violation of public policy, Martin must establish that his dismissal violated a fundamental policy that is beneficial for the public and embodied in a California statute or constitutional provision. Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1256 (1994).

As stated above, in the Complaint Martin avers that his was terminated in violation of public policy embodied under FEHA and/or the California Labor Code. Arrow avers that Martin has failed to present any evidence to create a genuine issue of fact as to Arrow's reason for Martin's termination. Further, Arrow contends that Martin cannot establish the requisite causal connection, because he cannot show that Arrow terminated him because of his disability. (Arrow Mot., p. 23.) For the reasons stated above, the Court finds that Arrow has failed to carry its Celotex burden with respect to this issue.

"To establish a prima facie case of retaliation, a plaintiff must show that she engaged in protected activity, that she was thereafter subject to adverse employment action by her employer, and there was a causal link between the two." Guthrey v. State of California, 63 Cal. App. 4th 1108, 1125 (1998) (internal quotation and citation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 04-1134 JVS (FMOx) | Date | May 9, 2006 |
| Title | Doug Martin v. Arrow Electronics | | |

Arrow contends that Martin cannot establish that Arrow retaliated against him or terminated his employment because he filed a workers' compensation claim. (Id.) Arrow avers that the decision to terminate Martin was made in early June 2002, but that Martin did not file a claim for workers' compensation until November 2002. (ASSUMF, ¶¶ 35, 36.) Martin contends that this claim is largely duplicative of his two claims under FEHA and does not separately address this cause of action in his Opposition to Arrow's Motion for Summary Judgment. (Martin Opp'n, pp. 18-19.) As stated, the Court fails to find, and Martin has failed to identify the portion of the record in which Martin contends that he was terminated or retaliated against due to his filing of a workers' compensation claim. Therefore Martin has not alleged that he engaged in a protected activity. Further, even if Martin alleged that the filing of a workers' compensation claim constituted a protected activity, it is clear that the claim was filed after the June 17, 2002 termination memorandum. Therefore only with respect to his claim for retaliation, the Court grants summary judgment in favor of Arrow.

D. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In order to state a cause of action for intentional infliction of emotion distress under California law, a plaintiff must state facts demonstrating "extreme and outrageous conduct." Cervantez v. J.C. Penney Co., 25 Cal. 3d 579, 593 (1979). For conduct to be considered outrageous, it must be so extreme as to exceed all bounds of conduct that is usually tolerated in a civilized community. Id. Further, demotions, layoffs, and terminations which occur in the normal course of employment do not constitute "outrageous" conduct. Cole v. Fair Oaks Fire Protection District, 43 Cal. 3d 148 (1987).

Arrow contends that there is no evidence of outrageous conduct necessary to support a cause of action for intentional infliction of emotional distress. (Arrow Mot., p. 24.) As Arrow avers, the alleged conduct by Arrow was a negative performance review and the termination of Martin's employment. (Complaint, ¶¶ 11, 12.) As Arrow points out, the only other conduct by Arrow alleged in the complaint is the issuance of two memorandums, one informing Martin that he was being terminated due to a reorganization of the business, and the other indicating the appointment of a new general manager as a result of the reorganization. (Complaint, ¶¶ 12, 13.) Arrow avers that this conduct falls within the normal employment relationship; criticism of work performance, demotion and termination of employment. (Arrow Mot., p. 25.) Arrow avers that the memoranda merely indicate that another individual was chosen as a general manager for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 04-1134 JVS (FMOx) | Date | May 9, 2006 |
|---|---|---|---|
| Title | Doug Martin v. Arrow Electronics | | |

the new consolidated organization, and that this conduct does not rise to the level of outrageous conduct. (Id.)

Martin, however, alleges that Arrow terminated him based on his disability, and despite explicit warning from Dr. Salter that notice of termination should not be sent at that time because it would "send Doug over the edge." (Martin's Statement of Genuine Issues, ¶ 102.) However, the Court notes that Salter testified that she believed that sending notice could send Doug over the edge, and "probably" asked Constantino if there was anyway she could not send the memorandum. (Id.) Martin further contends that Arrow fabricated grounds for terminating him, via the June 17, 2002, memorandum, and then contradicted that memorandum two days later, on June 19, 2002. (Martin Opp'n, p. 19.) Martin concludes that the "two smoking gun memoranda, in conjunction with the disability discrimination motive underlying such memoranda **and** Arrow's decision to send notice of such manufactured termination while Martin was enduring a particularly sensitive psychiatric condition, despite express warning from his [therapist], more than sufficiently establish liability for [intentional infliction of emotional distress]." (Martin Opp'n, p. 19; emphasis in original.)

Arrow responds that it did send notice of Martin's layoff to Dr. Salter, pursuant to her instruction. (Martin's Statement of Genuine Issues, ¶ 27.) Arrow states that in forwarding the notice to Martin's treating therapist, Arrow was following the instructions of Martin's therapist and it was she who used her professional judgment as to when to present Martin with the notice of lay off. (Arrow Reply, p. 14.) Arrow therefore concludes that its act of sending the June 17, 2002 letter to Dr. Salter does not constitute evidence of "outrageous conduct" sufficient to support a claim for intentional infliction of emotional distress. (Id., pp. 14-5.)

Arrow has carried its Celotex burden with respect to this cause of action. There can be no genuine dispute that even if all of Martin's claims are true, Arrow's conduct is not sufficiently outrageous so as rise to the level of intentional infliction of emotional distress. On their face, Arrow's notice to Martin and its announcement of Ainsworth's appointment were legitimate business communications drafted in a professional manner. Any sensitivity on Martin's part to a notice of termination was ameliorated by sending it to Dr. Salter. Even if Arrow were mistaken in its grounds for termination, the act of termination was not outrageous.

IV. **CONCLUSION**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 04-1134 JVS (FMOx)                      Date  May 9, 2006

Title  Doug Martin v. Arrow Electronics

      For the foregoing reasons the Court denies Martin's motion for partial summary judgment. The Court grants Arrow's motion for summary judgment with respect to the retaliation portion of Martin's tortious termination claim, and with respect to Martin's claim of intentional infliction of emotional distress. Arrow's motion for summary judgment is otherwise denied.

Initials of Preparer